# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br>RICHARD OPOKU AGYEMANG<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  1:24-mj-264<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 2020 through present__ in the county of __Hamilton__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1349 | Conspiracy to Commit Wire Fraud |

This criminal complaint is based on these facts:

See attached affidavit of United States Postal Inspector Benjamin Schild

☑ Continued on the attached sheet.

*Benjamin Schild*
*Complainant's signature*

Benjamin Schild, U.S. Postal Inspector
*Printed name and title*

Sworn to via FaceTime videoconference in accordance with Fed. R. Crim. P. 4.1.

Date: **Apr 12, 2024**

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge

City and state: Cincinnati, Ohio

### AFFIDAVIT IN SUPPORT OF
### A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Benjamin Schild, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.   I make this affidavit in support of a criminal complaint and arrest warrant for RICHARD OPOKU AGYEMANG for a violation of 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud).

2.   I am an Inspector with the United States Postal Inspection Service (hereafter "USPIS") and have been since December 2019. I am currently assigned to the Mail Fraud team in the Cincinnati Field Office. In this capacity, I investigate criminal matters that are connected to the mail, including money laundering and various types of fraud. Prior to my employment with the USPIS, I served as a Special Agent in the United States Secret Service for 12 years. I have received training and investigative experience in interviewing, arrest procedures, search and seizure, search warrant applications, and electronic media and computer investigations, as they relate to white collar crime.

3.   This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.   Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that RICHARD OPOKU AGYEMANG and other known and unknown conspirators have violated 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud).

//

//

//

## **PROBABLE CAUSE**

**A. Introduction and Background on "Romance Fraud" Schemes**

5. The USPIS and the U.S. Attorney's Office for the Southern District of Ohio are investigating a suspected "romance fraud" scheme being perpetrated by AGYEMANG, a resident of Cincinnati, Ohio, and others known and unknown.

6. Based on my training and experience, I know the following about romance fraud schemes:

   a. Perpetrators of romance fraud schemes commonly create false profiles on dating websites using false information and stolen pictures of individuals. In this Affidavit, I will call the imaginary individuals pictured in these false profiles the "Romantic Partner(s)."

   b. The perpetrators then use the false online profiles to initiate contact with victims. Once the perpetrators have initiated contact with a victim, pretending to be a Romantic Partner, they communicate with the victim primarily by messaging services. By expressing romantic interest in the victim, the perpetrators mislead the victim into believing he or she is in a relationship with the Romantic Partner.

   c. The perpetrators commonly represent that the Romantic Partner is currently abroad, providing a justification as to why the Romantic Partner is never able to meet the victim in person.

   d. Once the victim believes he or she is in a romantic relationship with the Romantic Partner, the perpetrators begin asking the victim to send money and/or other items of value. Commonly, the perpetrators falsely represent that the Romantic Partner is expecting a large inheritance of gold bars and is seeking to bring the gold bars to the

United States. The perpetrators, via the Romantic Partner, induce the victim to send money to pay for expenses associated with the gold inheritance. Other false representations that the perpetrators commonly make are that the Romantic Partner needs money for a plane ticket to visit the victim, money for bail after being falsely imprisoned, or money to pay medical bills. In fact, the money and valuables the victims send to the perpetrators are used for other purposes.

7. As I explain in more detail below, based on the investigation to date, as well as my training and experience investigating romance fraud schemes, there is probable cause to believe that AGYEMANG and other coconspirators are perpetrating a romance fraud scheme involving a violation of 18 U.S.C. § 1349.

**B. In 2022, Victim 1 sent at least $345,280 to AGYEMANG, having been told that the funds would be used by his online romantic partner, "Emily," to pay for medications needed by her sick mother and to release boxes of gold bars.**

8. I interviewed Victim 1, a resident of Virginia, in January 2024. Victim 1 told me that in November 2021 he began conversing via email and social media with an individual using the name "Emily [last name redacted]." Eventually, their communications moved from email to text conversations.

9. Victim 1 said that Emily spoke with an accent and purported to reside in Miami, FL, where she was working as an ICU nurse at Jackson Memorial Hospital. Eventually, Emily began asking Victim 1 for money, which he sent to her. Emily said the funds were going to pay for experimental and expensive medications meant for her mother in London. According to Victim 1, Emily also said she needed more money to pay "Mercury Assets Security Company" in order to release two boxes of gold bars worth $9.2 million.

10. Victim 1 has never met Emily in person and has not received any gold bars.

3

11.  Bank records confirm that from April to August 2022, nine wires drawn from an account controlled by Victim 1 were deposited into an account at Evolve Bank & Trust with an account number ending in 7249, whose sole authorized signer is RICHARD AGYEMANG (the "7249 Account"). The memo lines on the wire transfers read "[Emily's last name] Medical Payment."

    **C. From May to June 2023, Victim 2 sent $410,000 to AGYEMANG, having been told that the money would be used for, among other things, insurance fees on an inheritance of diamonds for his online romantic partner, "Kathy."**

12.  In December 2023, I interviewed Victim 2, who lives in New Mexico. Victim 2 told me he had previously met someone on an online dating website who went by the name "Kathy [last name redacted]" and that the two had developed a romantic relationship that moved to text messages and eventually to speaking on Skype and via email. According to Victim 2, Kathy said she was from Texas but currently in London and asked Victim 2 to help her get some antiques released she had purchased overseas.

13.  Victim 2 explained that in order for the antiques to be released, a $30,000 insurance and freight fee would need to be paid to have them shipped. Victim 2 said that, at Kathy's direction, he deposited a $30,000 cashier's check to a Wells Fargo bank account in the name of RISUN LLC.

14.  Records from Wells Fargo relating to RISUN LLC's bank account list RICHARD AGYEMANG as the "sole owner" of RISUN LLC and list a mailing address in Cincinnati, Ohio. The describe RISUN LLC's business as "merchandise buy and sell items household fragrances car equipment toys" and indicate that the LLC had "$100.00" in gross sales in 2022.

15.  Victim 2 also said that, as his relationship with Kathy progressed, Kathy said she was supposed to be receiving an inheritance of diamond stones from her deceased father in the

4

amount of $3.8 million. Victim 2 said that, according to Kathy, he was made a beneficiary of the inheritance, and he was then instructed to open a bank account with the First National Bank of London, where the money would be deposited. Victim 2 added that, according to Kathy, in order to transfer money from the account, insurance fees would have to be paid. Victim 2 stated he deposited another $120,000 cashier's check to the RISUN LLC Wells Fargo bank account mentioned above, connected to RICHARD AGYEMANG. Victim 2 later deposited several additional checks ($80,000, $100,000 and $80,000) into the same account, believing that they were for additional insurance payments that were needed.

16. Bank records show that on each date Victim 2 deposited checks to the RISUN LLC Wells Fargo account, the funds cleared and were accessible to RICHARD AGYEMANG.

17. Victim 2 provided the transcripts of chat conversations with what he believed were the Neelevet Logistics company, which was allegedly moving the antiques, and the First National Bank of London, where the supposed inheritance funds were being deposited. Based on screenshots of emails provided by Victim 2, it appears that the suspects created fraudulent websites for the First National Bank of London and for Neelevet, as well as fraudulent "customer support" communications. Victim 2's conversations with alleged customer support for Neelevet and First National Bank of London occurred using the following addresses: tickets@neelevet-logistics.p.tawk.email and tickets@tfnbol.p.tawk.email. Based on open-source queries, I determined that the website www.tawk.to provides free live-chat software designed to help businesses communicate with website visitors.

   **D. Many other suspected victims sent payments to accounts controlled by AGYEMANG.**

18. I have identified at least another four dozen suspected victims who have either wired money, deposited checks, or mailed checks to accounts in the name of RISUN LLC

5

and/or RICHARD AGYEMANG from June 2020 through the present. The total amount of these deposits was approximately $2 million.

19. I have been able to interview some of the other suspected victims and confirmed that, at least as to those individuals, the funds were sent in connection with a romance fraud. For example, one victim provided copies of emails showing that he had been induced to send $13,000 to the RISUN LLC Wells Fargo account to pay for alleged taxes on gold bars being imported to the United States by his alleged online romantic partner.

### E. AGYEMANG appears to be laundering the criminal proceeds of the fraud, including by making international wire transfers.

20. I have found examples of AGYEMANG making large international wire transfers shortly after receiving payments from suspected victims, a pattern consistent with international money laundering. For example, on December 21, 2022, a $45,000 check from a suspected victim[1] was deposited into AGYEMANG's RISUN LLC Wells Fargo business checking account, x3790. Two days later, on December 23, 2022, AGYEMANG sent a $25,000 international wire to a company in Zhejiang, China. As a second example, on May 24, 2023, a $120,000 check, from a known victim, was deposited into AGYEMANG's RISUN LLC Wells Fargo business checking account, x3790. The very next day, AGYEMANG again sent a $25,000 international wire to China, this time to a company in Shanghai, China.

21. I obtained a federal search warrant for the contents of AGYEMANG's personal email address, risun*****@gmail.com. The account contained, among other things, emails from Wells Fargo showing that in July 2023 two bank accounts controlled by AGYEMANG

---

[1] I spoke with a representative of the victim's bank, who informed me that their client had been the victim of an inheritance scam.

were closed due to problems with the checks being deposited. I also found emails from December 2022 showing that AGYEMGANG's account at Melio, a small-business accounts-payable tool, was closed after the company was "unable to verify RISUN LLC's account and activity," and another from December 2020 showing that his Cash App account was closed for violations of the application's terms of service and that Cash App "exercis[ed] its discretion . . . to block or reverse [AGYEMANG's] transfer of funds."

22. I also found an email from July 2021 in which Sendwave, a money-transfer application, wrote to AGYEMANG that he was "one of [the service's] top money remitters" and that therefore the company needed certain additional information to understand "the nature, source, and extent" of AGYEMANG's transactions. Sendwave asked, among other things, what the nature of AGYEMANG's work was and whether he had "ever sent money on behalf of someone else[.]" AGYEMANG responded, "I'm a respiratory therapist and Risun LLC business owner…I have NEVER sent money on anyone's behalf."

## CONCLUSION

23. Based on the foregoing, I request that the Court issue the proposed criminal complaint and arrest warrant.

## REQUEST FOR SEALING

24. I further request that the Court order that all papers in support of this criminal complaint and arrest warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution,

7

destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

*Benjamin Schild*
BENJAMIN SCHILD
Inspector, U.S. Postal Inspection Service

Subscribed and sworn to before me via FaceTime videoconference in accordance with Fed. R. Crim. P. 4.1 on April __12_, 2024.

_____
Karen L. Litkovitz
United States Magistrate Judge